JONATHAN B. DIXON *vs.* THOMAS J. HYNDMAN & another.

Middlesex.   November 16, 1900. — January 5, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

Under Pub. Sts. c. 191, § 5, a mechanic's lien is good against an unrecorded mortgage of which the petitioner had notice.

Review, by LORING, J., of legislation as to mechanics' liens in their relation to mortgages.

PETITION, filed April 25, 1898, to establish a mechanic's lien on certain land of the respondents and houses thereon, for materials furnished by the petitioner under a written contract with the respondents and used in the erection of said houses.

In the Superior Court the case was referred to George W. Anderson, Esquire, as referee, with an agreement of parties that

his report as to matters of fact should be final. The report of the referee was accepted by *Sheldon,* J., and a decree of sale entered, from which the respondents appealed. The following facts appeared by the referee's report:

The contract under which the materials were furnished was dated May 12, 1897. The respondents Thomas J. Hyndman and George H. Strongman thereby agreed to buy from the petitioner certain lumber and outside and inside finish, which they required for the construction of three houses on College Avenue and Summer Street in Medford. Before April 29, 1897, the premises were owned in fee by one Michael F. Dwyer, who on that day conveyed the property to the respondents Hyndman and Strongman. The deed was signed and acknowledged on that day. On the same day and as part of the same transaction Hyndman and Strongman executed a mortgage upon the same property to Michael F. Dwyer for $3,000. The deed and the mortgage were each re-acknowledged on July 10, 1897. Both instruments were recorded July 12, 1897.

It was contended at the trial that it was understood and agreed that the original deed and mortgage were not to be delivered so as to take effect until a construction mortgage had been negotiated upon the premises, and that in accordance with this agreement Richard J. Dwyer, a brother of Michael, who as justice of the peace had taken the acknowledgments, retained possession of said deed and mortgage until in July, 1897, a mortgage having been negotiated with one Mercer, other papers were executed. These other papers were : 1st. A partial release to Hyndman and Strongman by Michael F. Dwyer of the premises covered by the mortgage of April 29, said release covering land on the easterly side of College Avenue, acknowledged July 10 and recorded with the other papers on July 12. 2d. Hyndman and Strongman executed a mortgage upon the lot thus released to William L. Mercer to secure $2,500 payable in two months, which mortgage was recorded with the other papers on July 12. 3d. Hyndman and Strongman executed a second mortgage upon the same parcel, subject to the mortgage to Mercer, to secure $1,000 payable to Michael F. Dwyer in two months, acknowledged on July 10 and recorded with the other papers on July 12. On the same day and as part of the same transaction the

original deed and mortgage dated April 29, 1897, were re-acknowledged as above stated.

The referee found that the deed from Michael F. Dwyer to Hyndman and Strongman was duly delivered on April 29, 1897, to Richard J. Dwyer to hold and to record for the grantees, and that Hyndman and Strongman were therefore the owners of the property after that date. The mortgage of $3,000 back to Michael F. Dwyer was also delivered on that date, but was not recorded until July 12.

Before the execution of the contract of May 12, 1897, the petitioner was informed that Dwyer had taken back from Hyndman and Strongman a mortgage on the property. Under this contract the materials named in the petition were furnished by the petitioner and actually used by the respondents in the construction of their houses on the land described in the petition.

*C. A. McDonough*, for the respondents.

*J. B. Dixon*, pro se.

LORING, J. The only objection insisted upon by the respondents on their brief, or in argument, is, that the lien is not good against the unrecorded mortgage dated April 29, 1897, recorded July 12, 1897.

A part of the premises was released from the lien of the mortgage on July 10, 1897, and new mortgages on that part were given on that day, one to Mercer for $2,500, and, subject thereto, one to the original mortgagee for $1,000. So far as the part of the land covered by this release is concerned, the only mortgage, in existence on May 12, 1897, when the contract was made with the petitioner, has been released, and there can be no question of the petitioner's lien being the first encumbrance on it.

The validity of the lien on the balance of the land depends upon the true construction of Pub. Sts. c. 191, § 5. The respondents contend that, if the petitioner had actual knowledge of the mortgage to Michael F. Dwyer, it is valid against him, even if it was unrecorded; that an unrecorded deed is good, against those having actual notice of it at common law, and under Pub. Sts. c. 120, § 4, which recognizes the common law rule; and further that Pub. Sts. c. 191, § 5, should not be construed to change this rule, so far as mechanics' liens go.

The provisions of Pub. Sts. c. 191, § 5, are not found in the

earlier acts providing for mechanics' liens. St. 1819, c. 156. Rev. Sts. c. 117. St. 1851, c. 343. They appear for the first time in St. 1852, c. 307; and in this act they are in the same form, in which they are now enacted, except that they are there in the form of a proviso.

It is doubtless true that before St. 1852, c. 307, the lien attached to the owner's interest in the land and no more, and consequently, that if the petitioner knew of the existence of an unrecorded mortgage made by the owner, his lien was not good against it.

There is no provision on the subject in the original act of 1819, c. 156. But in c. 117 of the Revised Statutes, which the commissioners say in their notes is "founded wholly" on the earlier act with some new provisions introduced "with a view to accomplish more effectually the purpose of the Legislature," it is provided that if the land is mortgaged or is under any other encumbrance "at the time of recording the contract," the lien shall attach to "the right of redemption, or whatever other right or estate the owner had in the land." Rev. Sts. c. 117, § 26. At this time, the contract under which the work or materials were furnished had to be a contract with the owner of the land, a contract in writing, and recorded in the registry of deeds. St. 1819, c. 156, § 1. Rev. Sts. c. 117, § 1.

But this was changed, so far as a lien for work personally performed by the petitioner was concerned, by a short act passed the year before the act in question; by that act, a lien was given for work personally performed, when it had been done under a contract with the owner, or with persons who had contracted with the owner to purchase the land, or to erect buildings on it; in such case the contract did not have to be in writing; St. 1851, c. 343; this act recognized the former rule in regard to unrecorded mortgages; it provided that the person should have a lien "upon such building, and the lot of land on which the same stands, and upon the right of redeeming the same when under mortgage." St. 1851, c. 343, § 1.

The act in question was passed in the following year. It consisted of two sections; the second section regulated the practice when several mechanics had worked on the same building; the other section is the section in question, and gave a lien for work

or materials in any and every case where money was due for work or materials, whether performed personally or not, whether furnished under a contract with the owner or with the other persons mentioned in the previous act, whether in writing or not, and without the contract being recorded in the registry of deeds; but the act contained two provisos, one that no lien for materials should attach, unless notice of an intention to claim a lien therefor had been given; and the other the clause in question, that " nothing contained in this act, or in the act to which this is an addition, shall be so construed as to affect any mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed." This was re-enacted in its present form in Gen. Sts. c. 150, § 3; Pub. Sts. c. 191, § 5.

The language used in the second proviso of St. 1852, c. 307, § 1, is very different from that used in Rev. Sts. c. 117, § 26, and St. 1851, c. 343, § 1, and from that which would have been used had it been the intention of the Legislature to enact that the lien should attach to whatever interest in the land the owner had; and further, the system, introduced by the act of the previous year, and perfected by the act in question, differs materially from the system of which Rev. Sts. c. 117, § 26, was a part, and which had been in use for more than thirty years before. For these reasons, we do not feel at liberty to disregard the literal meaning of the words "duly recorded," and to construe the provision of St. 1852, c. 307, § 1, to be nothing more than the previous enactments in this connection; on the contrary, we are of opinion that it is to be construed to provide that the lien shall attach to the land which has been benefited by the erection of the building on which the petitioner has worked, or in which his materials have been used, except so far as there is a duly recorded mortgage thereon; and that the purpose of the Legislature in requiring that the mortgage should be duly recorded is to prevent frauds and perjuries arising from oral testimony of actual notice of an unrecorded mortgage.

It is true that § 26 of c. 117 of the Revised Statutes, which originally recognized that the petitioner's lien attached only to the interest which the mortgagor had, has been substantially re-enacted. Gen. Sts. c. 150, § 33. Pub. Sts. c. 191, § 36. If there is an inconsistency between the two sections, we are of opinion,

for the reasons given, that the provisions of § 5 must control. For a case where it was held that the provisions of this section as it stood in the General Statutes prevailed over those of § 36 as that section then stood, see *Dunklee* v. *Crane*, 103 Mass. 470.

This disposes of the further contention of the respondents that their mortgage is good on the general principles of the common law, and by force of the provisions of Pub. Sts. c. 120, § 4.

*Judgment affirmed.*